# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**   **2. PLEASE TYPE OR PRINT**   **3. STAPLE ALL ADDITIONAL PAGES**

| | | |
|---|---|---|
| Case Caption:<br><br>Calce, et al. v. City of New York, et al. | District Court or Agency:<br><br>S.D.N.Y. | Judge:<br><br>Hon. Edgardo Ramos |
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br><br>03/24/2025 | District Court Docket No.:<br><br>1:21-cv-08208 |
| | Date the Notice of Appeal was Filed:<br><br>04/08/2025 | Is this a Cross Appeal?<br><br>☐ Yes  ☑ No |

| | Counsel's Name: | Address: | Telephone No.: | Fax No.: | E-mail: |
|---|---|---|---|---|---|
| **Attorney(s) for Appellant(s):**<br><br>☑ Plaintiff<br><br>☐ Defendant | David H. Thompson<br>Cooper & Kirk, PLLC<br>1523 New Hampshire Ave., NW<br>Washington, DC 20036 | | 202-220-9600 | 202-220-9601 | dthompson@cooperkirk.com |
| **Attorney(s) for Appellee(s):**<br><br>☐ Plaintiff<br><br>☑ Defendant | Muriel Goode-Trufant<br>New York City Law Department<br>100 Church Street<br>New York, NY 10007 | | (212) 356-2200 | (212) 356-1148 | mgoodetr@law.nyc.gov |

| Has Transcript Been Prepared?<br><br>No. | Approx. Number of Transcript Pages:<br><br>N/A | Number of Exhibits Appended to Transcript:<br><br>N/A | Has this matter been before this Circuit previously? ☐ Yes ☑ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:     Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

*ADDENDUM "A"*:  COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B"*:  COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A:  JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party<br>☑ Federal question (U.S. not a party) | ☐ Diversity<br>☐ Other (specify): _____ |
| ☑ Final Decision<br>☐ Interlocutory Decision Appealable As of Right | ☐ Order Certified by District Judge (i.e., Fed . R. Civ. P. 54(b))<br>☐ Other (specify): _____ |

**IMPORTANT.  COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

**PART B:  DISTRICT  COURT DISPOSITION    (Check as many as apply)**

**1. Stage of Proceedings**

- [✓] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**

- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal

- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [ ] Judgment / Decision of the Court
- [✓] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**

- [ ] Damages:
  - [ ] Sought: $ _____
  - [ ] Granted: $ _____
  - [ ] Denied: $ _____
- [✓] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [✓] Denied

---

**PART C:  NATURE OF SUIT   (Check as many as apply)**

**1. Federal Statutes**

- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [✓] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): _____

- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright ☐ Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental

- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**

- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**

- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**

- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**

- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**

- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7.** Will appeal raise constitutional issue(s)?
- [✓] Yes    [ ] No

Will appeal raise a matter of first impression?
- [✓] Yes    [ ] No

---

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: _____ [✓] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A)   Arises from substantially the same case or controversy as this appeal?     [ ] Yes   [✓] No

   (B)   Involves an issue that is substantially similar or related to an issue in this appeal?   [ ] Yes   [✓] No

If yes, state whether  ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| | | | |

| Name of Appellant: |
|---|
| |

| Date: 04/25/2025 | Signature of Counsel of Record:  /s/ David H. Thompson |
|---|---|

---

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.

2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.

3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C**  (Rev. December 2016)

## Addendum A

**Description of the Nature of the Action:**

This case challenges the constitutionality of prohibitions in New York state and New York City on the sale or possession of electronic arms such as stun guns or tasers. *See* New York Penal Law § 265.01(1); New York City, N.Y., Code § 10-135 (the "Electronic Arms Ban").

Plaintiffs-Appellants in this case are five individuals, Nunzio Calce, Allen Chan, Shaya Greenfield, Amanda Kennedy, and Raymond Pezzoli. Each are peaceable, responsible citizens who are regularly in New York City (all but Kennedy live there, and she frequently visits from Connecticut for social and work-related reasons). Each of them would, if not for the Electronic Arms Ban, purchase and possess an electronic arm for lawful purposes. They are joined by the Second Amendment Foundation and Firearms Policy Coalition, two membership organizations that seek to promote and defend the Second Amendment rights of their members, including each of the individual Plaintiff-Appellants.

Plaintiff-Appellants filed this case in the Southern District of New York against the City of New York and the Commissioner of the New York City Police Department, claiming that Defendants-Appellees' enforcement of the Electronic Arms Ban infringes their rights under the Second and Fourteenth Amendments to the United States Constitution. They sought declaratory and injunctive relief, attorneys fees, and any other relief to which they are entitled. Following discovery, Plaintiff-Appellants moved for summary judgment and Defendants-Appellees cross-moved.

**The Result Below:**

The district court granted Defendants-Appellees' motion for summary judgment and denied Plaintiffs-Appellants' motion.

**Notice of Appeal, Lower Court Docket Sheet, and Relevant Opinions:**

A copy of the notice of appeal is attached as Exhibit A.

A copy of the district court docket sheet is attached as Exhibit B.

A copy of the district court's Opinion & Order, entered March 24, 2025, is attached as Exhibit C.

## Addendum B

**Issues Raise on Appeal:**

Whether the Second Amendment permits New York to ban law-abiding, adult citizens who are otherwise qualified to purchase and possess firearms from purchasing and possessing for lawful purposes "electronic arms" like stun guns or tasers.

**Standard of Review:**

This Court reviews a district court's ruling on cross-motions for summary judgment de novo, construing the evidence in the light most favorable to the non-moving party. *Ackerson v. City of White Plains*, 702 F.3d 15, 19 n.1 (2d Cir. 2012).

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NUNZIO CALCE; ALLEN CHAN; SHAYA GREENFIELD; AMANDA KENNEDY; RAYMOND PEZZOLI; SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> CITY OF NEW YORK; and EDWARD A. CABAN, in his official capacity as Commissioner of the New York City Police Department, <br><br> Defendants. | No. 21-cv-8208 (ER) <br><br> **NOTICE OF APPEAL** |

Notice is hereby given that Plaintiffs NUNZIO CALCE; ALLEN CHAN; SHAYA GREENFIELD; AMANDA KENNEDY; RAYMOND PEZZOLI; SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION, INC. hereby appeal to the United States Court of Appeals for the Second Circuit from the Opinion and Order (Doc. No. 57) and Judgment (Doc. No. 58) denying Plaintiffs' motion for summary judgment and granting Defendants' cross-motion for summary judgment, entered in this action on the 24th day of March, 2025. The appeal is from each and every aspect of that order and judgment.

Dated: New York, New York
     April 8, 2025

               DAVID JENSEN PLLC

               By: _____
                  David D. Jensen, Esq.
                  33 Henry Street
                  Beacon, New York 12508
                  david@djensenpllc.com

# EXHIBIT B

CLOSED,APPEAL,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:21−cv−08208−ER

Calce et al v. City Of New York et al
Assigned to: Judge Edgardo Ramos
Cause: 42:1983 Civil Rights Act

Date Filed: 10/05/2021
Date Terminated: 03/24/2025
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Nunzio Calce**
      represented by  **David Douglas Jensen**
David Jensen PLLC
111 John Street Suite 420
New York, NY 10038
(212)−380−6615
Fax: (917)−591−1318
Email: david@djensenpllc.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Shaya Greenfield**
      represented by  **David Douglas Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Raymond Pezzoli**
      represented by  **David Douglas Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Second Amendment Foundation**
      represented by  **David Douglas Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Firearms Policy Coalition, Inc.**
      represented by  **David Douglas Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Allen Chan**
      represented by  **David Douglas Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Amanda Kennedy**
      represented by  **David Douglas Jensen**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City Of New York**
      represented by  **Samantha Michelle Schonfeld**
New York City Law Department
100 Church Street
New York, NY 10007

(908)−812−3341
Email: sschonfe@law.nyc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas John Rizzuti**
New York City Law Department
100 Church Street
New York, NY 10007
212−356−2325
Email: trizzuti@law.nyc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dermot Shea**
*in his official capacity as Commissioner*
*of the New York City Police Department*

represented by **Samantha Michelle Schonfeld**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas John Rizzuti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/05/2021 | 1 | COMPLAINT against City Of New York, Dermot Shea. (Filing Fee $ 402.00, Receipt Number ANYSDC−25152304)Document filed by Second Amendment Foundation, Nunzio Calce, Raymond Pezzoli, Shaya Greenfield, Firearms Policy Coalition, Inc...(Jensen, David) (Entered: 10/05/2021) |
| 10/05/2021 | 2 | CIVIL COVER SHEET filed..(Jensen, David) (Entered: 10/05/2021) |
| 10/06/2021 | | ***NOTICE TO ATTORNEY REGARDING CIVIL CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney David Douglas Jensen. The following case opening statistical information was erroneously selected/entered: County code New York;. The following correction(s) have been made to your case entry: the County code has been modified to Bronx;. (jgo) (Entered: 10/06/2021)** |
| 10/06/2021 | | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney David Douglas Jensen. The party information for the following party/parties has been modified: Dermot Shea. The information for the party/parties has been modified for the following reason/reasons: party text was omitted;. (jgo) (Entered: 10/06/2021)** |
| 10/06/2021 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above−entitled action is assigned to Judge Edgardo Ramos. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district−judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf−related−instructions..(jgo) (Entered: 10/06/2021) |
| 10/06/2021 | | Magistrate Judge Sarah Netburn is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018−06/AO−3.pdf. (jgo) (Entered: 10/06/2021) |
| 10/06/2021 | | Case Designated ECF. (jgo) (Entered: 10/06/2021) |

| | | |
|---|---|---|
| 10/06/2021 | 3 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Second Amendment Foundation..(Jensen, David) (Entered: 10/06/2021) |
| 10/06/2021 | 4 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Firearms Policy Coalition, Inc...(Jensen, David) (Entered: 10/06/2021) |
| 12/22/2021 | 5 | AMENDED COMPLAINT amending 1 Complaint, against City Of New York, Dermot Shea.Document filed by Raymond Pezzoli, Shaya Greenfield, Nunzio Calce, Second Amendment Foundation, Firearms Policy Coalition, Inc., Allen Chan, Amanda Kennedy. Related document: 1 Complaint,..(Jensen, David) (Entered: 12/22/2021) |
| 01/28/2022 | 6 | **FILING ERROR – DEFICIENT PLEADING – SUMMONS REQUEST PDF ERROR –** REQUEST FOR ISSUANCE OF SUMMONS as to Keechant Sewell (as official capacity successor to Dermot Shea), re: 5 Amended Complaint,. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) Modified on 1/31/2022 (pc). (Entered: 01/28/2022) |
| 01/28/2022 | 7 | REQUEST FOR ISSUANCE OF SUMMONS as to City of New York, re: 5 Amended Complaint,. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) (Entered: 01/28/2022) |
| 01/31/2022 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney David Douglas Jensen to RE–FILE Document No. 6 Request for Issuance of Summons,. The filing is deficient for the following reason(s): the PDF attached to the docket entry for the issuance of summons is not correct; Only parties listed on the Amended Complaint caption title can be issued a summons;. Re–file the document using the event type Request for Issuance of Summons found under the event list Service of Process – select the correct filer/filers – and attach the correct summons form PDF. (pc)** (Entered: 01/31/2022) |
| 01/31/2022 | 8 | ELECTRONIC SUMMONS ISSUED as to City Of New York..(pc) (Entered: 01/31/2022) |
| 01/31/2022 | 9 | REQUEST FOR ISSUANCE OF SUMMONS as to Dermot Shea, re: 5 Amended Complaint,. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) (Entered: 01/31/2022) |
| 02/01/2022 | 10 | ELECTRONIC SUMMONS ISSUED as to Dermot Shea..(sj) (Entered: 02/01/2022) |
| 02/28/2022 | 11 | AFFIDAVIT OF SERVICE. City Of New York served on 2/15/2022, answer due 3/8/2022. Service was accepted by Ariton Marke, General Agent. Document filed by Amanda Kennedy; Allen Chan; Raymond Pezzoli; Shaya Greenfield; Nunzio Calce; Second Amendment Foundation; Firearms Policy Coalition, Inc...(Jensen, David) (Entered: 02/28/2022) |
| 02/28/2022 | 12 | AFFIDAVIT OF SERVICE. Dermot Shea served on 2/15/2022, answer due 3/8/2022. Service was accepted by Bono Giorgia, Co–worker. Document filed by Amanda Kennedy; Allen Chan; Raymond Pezzoli; Shaya Greenfield; Nunzio Calce; Second Amendment Foundation; Firearms Policy Coalition, Inc...(Jensen, David) (Entered: 02/28/2022) |
| 03/07/2022 | 13 | LETTER MOTION for Extension of Time *to Answer or Otherwise Respond to the Complaint* addressed to Judge Edgardo Ramos from Samantha Schonfeld dated March 7, 2022. Document filed by City Of New York, Dermot Shea..(Schonfeld, Samantha) (Entered: 03/07/2022) |
| 03/07/2022 | 14 | ORDER: granting 13 Letter Motion for Extension of Time. The Application is Granted. (Signed by Judge Edgardo Ramos on 3/07/2022) (ama) (Entered: 03/07/2022) |
| 03/07/2022 | | Set/Reset Deadlines: City Of New York answer due 4/22/2022; Dermot Shea answer due 4/22/2022. (ama) (Entered: 03/07/2022) |

| | | |
|---|---|---|
| 04/22/2022 | 15 | ANSWER to 5 Amended Complaint,. Document filed by City Of New York, Dermot Shea..(Schonfeld, Samantha) (Entered: 04/22/2022) |
| 05/03/2022 | 16 | NOTICE OF APPEARANCE by Thomas John Rizzuti on behalf of City Of New York, Dermot Shea..(Rizzuti, Thomas) (Entered: 05/03/2022) |
| 06/30/2022 | 17 | NOTICE OF INITIAL COURT CONFERENCE: THIS MATTER HAS BEEN SCHEDULED FOR AN INITIAL CASE MANAGEMENT AND SCHEDULING CONFERENCE, pursuant to Fed. R. Civ. P. 16, on July 22, 2022 at 10:45 a.m. The conference will be held remotely by telephone. The parties are instructed to call the Court at (877) 411−9748 and use access code 3029857#. PLAINTIFF, OR COUNSEL FOR PLAINTIFF(S) SHALL NOTIFY ALL PARTIES IN WRITING AND PROVIDE ALL PARTIES WITH A COPY OF THIS NOTICE ANDTHE ATTACHED CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER, UNLESS THE CASE HAS BEEN REMOVED FROM STATE COURT, IN WHICH EVENT COUNSEL FOR THE REMOVING DEFENDANT(S) SHALL PROVIDE SUCH NOTICE TO ALL PARTIES. Initial Conference set for 7/22/2022 at 10:45 AM before Judge Edgardo Ramos. (ama) (Entered: 07/01/2022) |
| 07/20/2022 | 18 | RULE 26(f) DISCOVERY PLAN REPORT.Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) (Entered: 07/20/2022) |
| 07/22/2022 | | Minute Entry for proceedings held before Judge Edgardo Ramos: Initial Pretrial Conference held on 7/22/2022 by telephone. Plaintiffs' and Defendants' counsel present. Case management plan signed. A case management conference will be held on May 12, 2023 at 10:00 AM.(jar) Modified on 7/22/2022 (jar). (Entered: 07/22/2022) |
| 07/22/2022 | 19 | CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER: This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f): All parties do not consent to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). This case is not to be tried to a jury. Amended Pleadings due by 8/19/2022. Joinder of Parties due by 8/19/2022. Deposition due by 5/5/2023. All Discovery due by 5/12/2023. Non−Expert depositions shall be completed by January 6, 2023. The Magistrate Judge assigned to this case is the Hon. Sarah Netburn. The next Case Management Conference set for 5/12/2023 at 10:00 AM before Judge Edgardo Ramos. And as set forth herein. SO ORDERED. (Signed by Judge Edgardo Ramos on 7/22/2022) (ama) (Entered: 07/22/2022) |
| 02/28/2023 | 20 | NOTICE OF Substitution of Attorney. Old Attorney: Thomas Rizzuti, New Attorney: Samantha Schonfeld, Address: NYC Law Department, 100 Church Street, New York, New York, USA 10007, 2123562183. Document filed by City Of New York, Dermot Shea..(Rizzuti, Thomas) (Entered: 02/28/2023) |
| 05/10/2023 | 21 | CONSENT LETTER MOTION to Adjourn Conference addressed to Judge Edgardo Ramos from David Jensen dated 5/10/2023., LETTER MOTION for Extension of Time addressed to Judge Edgardo Ramos from David Jensen dated 5/10/2023. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) (Entered: 05/10/2023) |
| 05/11/2023 | 22 | ORDER granting 21 Letter Motion to Adjourn Conference; granting 21 Letter Motion for Extension of Time. The request is granted. All discovery shall be completed by May 26, 2023. The parties are directed to appear for a Case Management Conference on May 26, 2023, at 10:30 AM. SO ORDERED. (Case Management Conference set for 5/26/2023 at 10:30 AM before Judge Edgardo Ramos., Discovery due by 5/26/2023.) (Signed by Judge Edgardo Ramos on 5/11/2023) (rro) (Entered: 05/11/2023) |
| 05/23/2023 | | DOCKET ANNOTATION: The case management conference scheduled for May 26, 2023 at 10:30 a.m. will occur by telephone. The parties are instructed to call (877) 411−9748 and enter access code 3029857# when prompted.(jar) (Entered: 05/23/2023) |
| 05/26/2023 | | Minute Entry for proceedings held before Judge Edgardo Ramos: Case Management Conference held on 5/26/2023 by telephone. Plaintiff's and Defendant's counsel present. All discovery, including expert discovery, shall be completed by October 12, |

| | | |
|---|---|---|
| | | 2023. A case management conference will be held on October 19, 2023 at 3:30 p.m. by telephone. The parties are instructed to call (877) 411−9748 and enter access code 3029857# when prompted. (jar) (Entered: 05/26/2023) |
| 10/13/2023 | | RESCHEDULING NOTICE: The case management conference previously scheduled for 3:30 p.m. on October 19, 2023 is hereby rescheduled for 2:00 p.m. on October 19. The parties are instructed to call (877) 411−9748 and enter access code 3029857# when prompted. (jar) (Entered: 10/13/2023) |
| 10/19/2023 | | Minute Entry for proceedings held before Judge Edgardo Ramos: Case Management Conference held on 10/19/2023 by telephone. Plaintiff's and Defendant's counsel present. All discovery shall be completed by January 5, 2024. Summary judgment briefing schedule as follows: Calce's motion is due February 2, 2023; City's response and cross−motion are due March 1, 2024; Calce's response and reply are due March 29, 2023; and City's reply is due April 12, 2023. (jar) (Entered: 10/19/2023) |
| 02/01/2024 | 23 | JOINT LETTER MOTION for Extension of Time addressed to Judge Edgardo Ramos from David D. Jensen dated 1 February 2024. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) (Entered: 02/01/2024) |
| 02/02/2024 | 24 | ORDER: granting 23 Letter Motion for Extension of Time. The request is granted. The Court adopts the parties' new proposed briefing deadlines and fact discovery deadline outlined herein. SO ORDERED. Motions due by 3/1/2024. (Signed by Judge Edgardo Ramos on 2/02/2024) (ama) (Entered: 02/02/2024) |
| 02/02/2024 | | Set/Reset Deadlines: Cross Motions due by 3/29/2024. Fact Discovery due by 2/29/2024. Responses due by 4/26/2024 Replies due by 5/10/2024. (ama) (Entered: 02/02/2024) |
| 03/01/2024 | 25 | MOTION for Summary Judgment . Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) (Entered: 03/01/2024) |
| 03/01/2024 | 26 | MEMORANDUM OF LAW in Support re: 25 MOTION for Summary Judgment . . Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David)) (Entered: 03/01/2024) |
| 03/01/2024 | 27 | RULE 56.1 STATEMENT. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) (Entered: 03/01/2024) |
| 03/01/2024 | 28 | AFFIDAVIT of Nunzio Calce in Support re: 25 MOTION for Summary Judgment .. Document filed by Nunzio Calce..(Jensen, David) (Entered: 03/01/2024) |
| 03/01/2024 | 29 | AFFIDAVIT of Allen Chan in Support re: 25 MOTION for Summary Judgment .. Document filed by Allen Chan..(Jensen, David) (Entered: 03/01/2024) |
| 03/01/2024 | 30 | AFFIDAVIT of Shaya Greenfield in Support re: 25 MOTION for Summary Judgment .. Document filed by Shaya Greenfield..(Jensen, David) (Entered: 03/01/2024) |
| 03/01/2024 | 31 | AFFIDAVIT of Amanda Kennedy in Support re: 25 MOTION for Summary Judgment .. Document filed by Amanda Kennedy. (Attachments: # 1 Exhibit Criminal Court Appearance Ticket (redacted)).(Jensen, David) (Entered: 03/01/2024) |
| 03/01/2024 | 32 | AFFIDAVIT of Raymond Pezzoli in Support re: 25 MOTION for Summary Judgment .. Document filed by Raymond Pezzoli..(Jensen, David) (Entered: 03/01/2024) |
| 03/01/2024 | 33 | AFFIDAVIT of Adam Kraut in Support re: 25 MOTION for Summary Judgment .. Document filed by Second Amendment Foundation..(Jensen, David) (Entered: 03/01/2024) |
| 03/01/2024 | 34 | AFFIDAVIT of Brandon Combs in Support re: 25 MOTION for Summary Judgment .. Document filed by Firearms Policy Coalition, Inc...(Jensen, David) (Entered: 03/01/2024) |
| 03/01/2024 | 35 | AFFIDAVIT of David D. Jensen, Esq. in Support re: 25 MOTION for Summary Judgment .. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, |

| | | |
|---|---|---|
| | | Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation. (Attachments: # 1 Exhibit 1 − 2023 OpenData Arrests, # 2 Exhibit 2 − 2022 OpenData Arrests, # 3 Exhibit 3 − 2021 OpenData Arrests, # 4 Exhibit 4 − Defendants' Responses to Plaintiffs' Interrogatories and Requests for Production, # 5 Exhibit 5 − NYPD Police Student Guide (selected), # 6 Exhibit 6 − Bill Jacket, 1976 NY Laws ch 217, # 7 Exhibit 7 − Bill Jacket, 1990 NY Laws ch 264, # 8 Exhibit 8 − NY Times, Defensive Use of Stun Guns Increases (1985)).(Jensen, David) (Entered: 03/01/2024) |
| 03/28/2024 | 36 | LETTER MOTION for Extension of Time *to file cross−motion for summary judgment* addressed to Judge Edgardo Ramos from Samantha Schonfeld dated March 28, 2024. Document filed by City Of New York..(Schonfeld, Samantha) (Entered: 03/28/2024) |
| 03/29/2024 | 37 | ORDER granting 36 Letter Motion for Extension of Time. The request is granted. The Court adopts the proposed briefing schedule outlined herein. SO ORDERED. (Signed by Judge Edgardo Ramos on 3/29/2024) (jca) (Entered: 03/29/2024) |
| 03/29/2024 | | Set/Reset Deadlines: Cross Motions due by 4/26/2024. Responses due by 5/24/2024 Replies due by 6/7/2024. (jca) (Entered: 03/29/2024) |
| 04/26/2024 | 38 | CROSS MOTION for Summary Judgment . Document filed by City Of New York, Dermot Shea..(Schonfeld, Samantha) (Entered: 04/26/2024) |
| 04/26/2024 | 39 | RULE 56.1 STATEMENT. Document filed by City Of New York, Dermot Shea..(Schonfeld, Samantha) (Entered: 04/26/2024) |
| 04/26/2024 | 40 | COUNTER STATEMENT TO 27 Rule 56.1 Statement. Document filed by City Of New York, Dermot Shea..(Schonfeld, Samantha) (Entered: 04/26/2024) |
| 04/26/2024 | 41 | DECLARATION of Artur Edward Sadowski in Support re: 38 CROSS MOTION for Summary Judgment .. Document filed by City Of New York, Dermot Shea. (Attachments: # 1 Exhibit NYPD Student Guide Excerpt).(Schonfeld, Samantha) (Entered: 04/26/2024) |
| 04/26/2024 | 42 | DECLARATION of Samantha Schonfeld in Support re: 38 CROSS MOTION for Summary Judgment .. Document filed by City Of New York, Dermot Shea. (Attachments: # 1 Exhibit Amended Complaint, # 2 Exhibit Expert Report of Robert Spitzer, # 3 Exhibit Penal Law Section 265.01, # 4 Exhibit NYC Admin Code Section 10−135).(Schonfeld, Samantha) (Entered: 04/26/2024) |
| 04/26/2024 | 43 | MEMORANDUM OF LAW in Support re: 38 CROSS MOTION for Summary Judgment . . Document filed by City Of New York, Dermot Shea..(Schonfeld, Samantha) (Entered: 04/26/2024) |
| 05/22/2024 | 44 | CONSENT LETTER MOTION for Extension of Time to File Response/Reply as to 38 CROSS MOTION for Summary Judgment ., 25 MOTION for Summary Judgment . addressed to Judge Edgardo Ramos from David Jensen, esq. dated 22 May 2024. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) (Entered: 05/22/2024) |
| 05/23/2024 | 45 | CONSENT LETTER MOTION for Extension of Time *(corrected)* addressed to Judge Edgardo Ramos from David Jensen, esq. dated May 22, 2024. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) (Entered: 05/23/2024) |
| 05/23/2024 | 46 | ORDER granting 45 Letter Motion for Extension of Time; terminating 44 Letter Motion for Extension of Time to File Response/Reply. The request is granted. Plaintiffs' opposition and reply brief shall be due May 31, 2024. Defendants' reply brief shall be due June 14, 2024. The Clerk of Court is respectfully directed to terminate the motion, Docs. 44, 45. SO ORDERED. (Signed by Judge Edgardo Ramos on 5/23/2024) (vfr) (Entered: 05/23/2024) |
| 05/23/2024 | | Set/Reset Deadlines: Responses due by 5/31/2024 Replies due by 6/14/2024. (vfr) (Entered: 05/23/2024) |

| | | |
|---|---|---|
| 05/29/2024 | 47 | CONSENT LETTER MOTION for Extension of Time addressed to Judge Edgardo Ramos from David Jensen, esq. dated 29 May 2024. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) (Entered: 05/29/2024) |
| 05/30/2024 | 48 | ORDER granting 47 Letter Motion for Extension of TimeThe request is granted. Plaintiffs' opposition and reply brief shall be due June 6, 2024. Defendants' reply brief shall be due June 21, 2024. The Clerk of Court is respectfully directed to terminate the motion, Doc. 47. SO ORDERED. (Signed by Judge Edgardo Ramos on 5/30/2024) (jca) (Entered: 05/30/2024) |
| 05/30/2024 | | Set/Reset Deadlines: Responses due by 6/6/2024 Replies due by 6/21/2024. (jca) (Entered: 05/30/2024) |
| 06/06/2024 | 49 | MEMORANDUM OF LAW in Opposition re: 38 CROSS MOTION for Summary Judgment ., 25 MOTION for Summary Judgment . . Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) (Entered: 06/06/2024) |
| 06/06/2024 | 50 | COUNTER STATEMENT TO 39 Rule 56.1 Statement. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation..(Jensen, David) (Entered: 06/06/2024) |
| 06/12/2024 | 51 | NOTICE of of Constitutional Question mailed May 2, 2024. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation. (Attachments: # 1 Exhibit Attached Pleadings & Papers).(Jensen, David) (Entered: 06/12/2024) |
| 06/17/2024 | 52 | CONSENT LETTER MOTION for Extension of Time addressed to Judge Edgardo Ramos from Samantha Schonfeld dated June 17, 2024. Document filed by City Of New York..(Schonfeld, Samantha) (Entered: 06/17/2024) |
| 06/18/2024 | 53 | ORDER granting 52 Letter Motion for Extension of Time. The request is granted. The City may file a reply of up to fifteen pages by July 12, 2024. SO ORDERED. (Signed by Judge Edgardo Ramos on 6/17/2024) (jca) (Entered: 06/18/2024) |
| 06/18/2024 | | Set/Reset Deadlines: Replies due by 7/12/2024. (jca) (Entered: 06/18/2024) |
| 07/10/2024 | 54 | LETTER MOTION for Extension of Time *for Defendant to File Reply* addressed to Judge Edgardo Ramos from Samantha Schonfeld dated July 10, 2024. Document filed by City Of New York..(Schonfeld, Samantha) (Entered: 07/10/2024) |
| 07/10/2024 | 55 | ORDER granting 54 Letter Motion for Extension of Time. The request is granted. The City shall file its reply by July 26, 2024. SO ORDERED. (Signed by Judge Edgardo Ramos on 7/10/2024) (jca) (Entered: 07/10/2024) |
| 07/10/2024 | | Set/Reset Deadlines: Replies due by 7/26/2024. (jca) (Entered: 07/10/2024) |
| 07/26/2024 | 56 | REPLY MEMORANDUM OF LAW in Support re: 38 CROSS MOTION for Summary Judgment . . Document filed by City Of New York, Dermot Shea..(Schonfeld, Samantha) (Entered: 07/26/2024) |
| 03/24/2025 | 57 | OPINION & ORDER re: 38 CROSS MOTION for Summary Judgment . filed by City Of New York, Dermot Shea, 25 MOTION for Summary Judgment . filed by Amanda Kennedy, Raymond Pezzoli, Allen Chan, Nunzio Calce, Second Amendment Foundation, Firearms Policy Coalition, Inc., Shaya Greenfield. For the reasons set forth above, Plaintiffs' motion for summary judgment is DENIED, and Defendants' cross−motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the motions, Docs. 25 and 38, and close the case. It is SO ORDERED. (Signed by Judge Edgardo Ramos on 3/24/2025) (jca) Transmission to Orders and Judgments Clerk for processing. (Entered: 03/24/2025) |
| 03/24/2025 | 58 | CLERK'S JUDGMENT re: 57 Memorandum & Opinion in favor of City Of New York, Dermot Shea against Firearms Policy Coalition, Inc., Second Amendment Foundation, Allen Chan, Amanda Kennedy, Nunzio Calce, Raymond Pezzoli, Shaya Greenfield. It is hereby ORDERED, ADJUDGED AND DECREED: That for the |

| | | |
|---|---|---|
| | | reasons stated in the Court's Opinion & Order dated March 24, 2025, Plaintiffs' motion for summary judgment is DENIED, and Defendants' cross−motion for summary judgment is GRANTED. Accordingly, the case is closed. (Signed by Judge Edgardo Ramos on 3/24/2025) (Attachments: # 1 Appeal Package) (tp) (Entered: 03/24/2025) |
| 04/08/2025 | 59 | NOTICE OF APPEAL from 57 Memorandum & Opinion,, 58 Clerk's Judgment,,. Document filed by Nunzio Calce, Allen Chan, Firearms Policy Coalition, Inc., Shaya Greenfield, Amanda Kennedy, Raymond Pezzoli, Second Amendment Foundation. Filing fee $ 605.00, receipt number ANYSDC−30901191. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Jensen, David) Modified on 4/9/2025 (km). (Entered: 04/08/2025) |
| 04/09/2025 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 59 Notice of Appeal.(km) (Entered: 04/09/2025) |
| 04/09/2025 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 59 Notice of Appeal, filed by Amanda Kennedy, Raymond Pezzoli, Allen Chan, Nunzio Calce, Second Amendment Foundation, Firearms Policy Coalition, Inc., Shaya Greenfield were transmitted to the U.S. Court of Appeals.(km) (Entered: 04/09/2025) |

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NUNZIO CALCE, ALLEN CHAN,
SHAYA GREENFIELD, AMANDA
KENNEDY, RAYMOND PEZZOLI,
SECOND AMENDMENT
FOUNDATION, *and* FIREARMS
POLICY COALITION, INC.,

Plaintiffs,

– *against* –

THE CITY OF NEW YORK *and* JESSICA
TISCH, *in her official capacity as the
Commissioner of the New York City Police
Department*,

Defendants.

**OPINION & ORDER**

21 Civ. 8208 (ER)

RAMOS, D.J.:

Nunzio Calce, Allen Chan, Shaya Greenfield, Amanda Kennedy, Raymond

Pezzoli, the Second Amendment Foundation, and the Firearms Policy Coalition, Inc.

(collectively, "Plaintiffs") bring this § 1983 action against the City of New York (the

"City") and Jessica Tisch,[1] in her official capacity as Commissioner of the New York City

Police Department (the "NYPD Commissioner," and collectively, "Defendants"), for

enforcing a New York State law which prohibits private citizens from possessing stun

guns and tasers, and a New York City law which prohibits private citizens from

possessing and selling stun guns.

---

[1] Plaintiffs originally named Dermot Shea as a defendant in his official capacity as Commissioner of the
New York City Police Department.  *See* Doc. 1.  Pursuant to Federal Rule of Civil Procedure 25(d), "when
a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,]
[t]he officer's successor is automatically substituted as a party."  Fed. R. Civ. P. 25(d).  Jessica Tisch was
appointed NYPD Commissioner effective November 25, 2024, and she currently serves in that role.  *See
Mayor Adams Appoints Jessica Tisch as NYPD Commissioner*, https://www.nyc.gov/office-of-the-
mayor/news/847-24/mayor-adams-appoints-jessica-tisch-nypd-commissioner#/0 (last visited Mar. 23,
2025).  Therefore, Tisch is automatically substituted as party to this case.

Before the Court are Plaintiffs' motion for summary judgment and Defendants' cross-motion for summary judgment. For the following reasons, Plaintiffs' motion for summary judgment is DENIED, and Defendants' cross-motion for summary judgment is GRANTED.

## I.    BACKGROUND

### A. Factual Background[2]

#### 1.  The Parties

Plaintiffs Calce, Chan, Greenfield, and Pezzoli are New York City residents. Doc. 50 ¶¶ 1–4. Plaintiff Kennedy lives in Bristol, Connecticut, however her agent and recording studio are located in New York City, so she visits New York "on a regular basis," for both social and work-related reasons. Doc. 40 at 10–11.

The Second Amendment Foundation ("SAF") and Firearms Policy Coalition, Inc. ("FPC") are nonprofit organizations. *Id.* at 17, 19. Each have members in New York State and City, including all the individual plaintiffs. *Id.* at 18, 20. SAF, which has over 720,000 supporters nationwide, "promot[es] both the exercise of the right to keep and bear arms, as well as education, research, publishing, and legal action focusing on the constitutional right to privately own and possess firearms." *Id.* at 18.[3] Plaintiffs allege that SAF has spent a "significant" amount of time responding to requests from its members and supporters, as well as from the general public, resulting from "New York City's enforcement of the State and City laws prohibiting stun guns and tasers." *Id.* at 19.

"FPC's mission is to defend and promote . . . the fundamental, individual Second Amendment right to keep and bear arms[,] advance individual liberty, and restore

---

[2] The following facts are taken from the parties' Local Rule 56.1 Statements, and the parties' responses thereto, Docs. 40 (Defendants' Response to Plaintiffs' SOF), 50 (Plaintiffs' Response to Defendants' SOF). The facts recited here are undisputed unless otherwise noted.

[3] "SAF publishes three periodicals (The New Gun Week, Women and Guns, and The Gottlieb-Tartaro Report) and also publishes the academic publication Journal of Firearms and Public Policy. SAF promotes research and education on the consequences of abridging the right to keep and bear arms and on the historical grounding and importance of the right to keep and bear arms as one of the core civil rights of United States citizens." Doc. 40 at 18.

freedom." *Id.* at 20. FPC additionally conducts "legislative and regulatory advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs." *Id.* Representatives from FPC have "spent time, money and other resources answering questions and providing advice" concerning the "legal status of stun guns and tasers in New York City." *Id.* at 21.

Calce, Chan, Greenfield, Pezzoli, and Kennedy each "would like to purchase, possess and carry a stun gun or a taser in the City of New York." *Id.* at 3, 5, 7, 9, 11. Calce, Chan, Greenfield, and Pezzoli specifically desire a stun gun and taser to protect themselves both at home and in public. Doc. 50 ¶ 1–4.[4] None of the individual plaintiffs have ever been convicted of a felony nor confined to a mental institution, and to the best of their knowledge, they are each legally eligible to purchase and possess firearms under New York law and federal law. Doc. 40 at 4, 6, 8, 10, 13.

However, each of them has refrained from purchasing, possessing, or carrying a stun gun or taser in New York City, out of fear that they will be arrested or otherwise prosecuted by NYPD officers for doing so. *Id.* at 3, 5, 7, 9, 11. All of them have an "understanding that NYPD officers will enforce the prohibitions against stun guns and tasers." *Id.* at 4, 6, 8, 9, 13. On November 16, 2021, when she lived in Brooklyn, Kennedy was charged by the NYPD with possession of a stun gun, in violation of New York City Administrative Code § 10-135. *Id.* at 12–13. The charge resulted from an incident in which Kennedy brandished her stun gun to deter a woman who had hit her in the face from further attacking her. *Id.* at 11–12. FPC assisted Kennedy in paying for counsel to defend against the charge, *id.* at 21, which was ultimately resolved through an adjournment in contemplation of dismissal, which the Kings County Criminal Court issued on December 6, 2021. Doc. 50 ¶ 7.

---

[4] Neither of the 56.1 statements discusses a specific purpose behind Kennedy's desire to purchase the weapons.

Defendant City of New York is a municipal corporation incorporated under the laws of the State of New York. *Id.* ¶ 10. The current NYPD Commissioner is Jessica Tisch.

### 2.  *Stun Guns and Tasers*

An electronic stun gun is defined as "any device designed primarily as a weapon, the purpose of which is to stun, cause mental disorientation, render unconscious or paralyze a person by passing a high voltage electrical shock to such person." Doc. 50 ¶ 18 (quoting N.Y. Penal Law § 265.00(15-c)). Stun guns "require direct contact between the device and an individual." *Id.* ¶ 19.

An electronic dart gun, commonly referred to as a "taser," is defined as "any device designed primarily as a weapon, the purpose of which is to momentarily stun, knock out or paralyze a person by passing an electrical current to such person by means of a dart or projectile." *Id.* ¶ 20 (quoting N.Y. Penal Law § 265.00(15-a)). Tasers "incapacitate individuals by transmitting pulses of electric current" by "fir[ing] two small darts that are connected to the device with wires." *Id.* ¶ 21–22.

"Improper use of stun guns and tasers can result in serious injury, including death." *Id.* ¶ 28. From 2000 through 2020, "tasers were the third leading cause of death among fatalities resulting from civilian-police encounters." *Id.* ¶ 31. Defendants' expert report cites to a USA Today article which provides that "[s]ince 2010, there have been at least 513 cases in which subjects died soon after police used Tasers on them, according to fatalencounters.org." *Id.* ¶ 30. Moreover, according to Defendants, both stun guns and tasers have been "used by criminals to intimidate and even torture victims." *Id.* ¶ 29.

"Between 1970 and the early 2000s, seven states, including New York, enacted laws banning civilian possession of stun guns and tasers." *Id.* ¶ 24. "Approximately 40 localities within 15 states enacted similar restrictions[.]" *Id.* ¶ 25.

### 3. New York State and New York City Provisions

New York Penal Law § 265.01, adopted in 1974 by the State of New York,[5]

provides that "[a] person is guilty of criminal possession of a weapon in the fourth

degree," a Class A misdemeanor, when:

> (1) He or she possesses any firearm, **electronic dart gun**, **electronic stun gun**, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slingshot, shuriken, or throwing star[.]

N.Y. Penal Law § 265.01 (emphasis added); *see also* Doc. 50 ¶ 14–15.

New York City Administrative Code § 10-135, adopted in 1985 by the City of

New York, "prohibits the possession and sale of electronic stun guns," a Class A

misdemeanor, providing:

> a. As used in this section, "electronic stun gun" shall mean any device designed primarily as a weapon, the purpose of which is to stun, render unconscious or paralyze a person by passing an electronic shock to such person, but shall not include an "electronic dart gun" as such term is defined in § 265.00 of the penal law.
>
> b. It shall be unlawful for any person to sell or offer for sale or to have in his or her possession within the jurisdiction of the city any **electronic stun gun**.

New York City, N.Y., Code § 10-135 (emphasis added); *see also* Doc. 50 ¶ 16–17.[6]

The NYPD Police Student Guide[7] identifies the "electronic dart gun" and

"electronic stun gun" as being among the weapons for which "[n]o intent is required, so

that the mere possession of [them] is a crime."  Doc. 40 at 16 (emphasis in original); *see

also* Doc. 35-5 at 8.

According to public information that the City provides online, the NYPD arrested

1,307 individuals in 2021, 1,552 in 2022, and 2,229 in 2023, for violating N.Y. Penal

---

[5] Plaintiffs state that the 1974 enactment of N.Y. Penal Law § 265.01 "did not address electronic dart guns or electronic stun guns," although it does now.  Doc. 40 ¶ 14.

[6] There is no City regulation of tasers being challenged in the instant case.  *See* Doc. 50 at ¶¶ 13–17.

[7] Defendants produced this document in response to Plaintiffs' discovery request for "[a]ll training materials that pertain to or address Stun Guns and/or Tasers, which have been used at any point from January 1, 2017 to present."  Doc. 35-5 ¶ 7; *see* Doc. 35-4 at 9.

Law § 265.01(1).  Doc. 40 at 14.  However, Defendants explain that they "do not readily have at their disposal records illustrating the number of arrests made pursuant to [N.Y.] Penal Law § 265.01 specifically for the possession or use of stun guns and tasers."  *Id.* at 15.  As for N.Y.C. Admin. Code § 10-135, Defendants explain that NYPD employees would have to "look up individual arrest reports to determine if an arrestee was charged with a violation of Administrative Code § 10-135" on the dates Plaintiffs requested, and in any event, Defendants "do not readily have at their disposal records illustrating the number of arrests made pursuant to Administrative Code § 10-135 specifically for the possession or use of stun guns and tasers."[8]  *Id.* at 16.

### 4.  Historical Regulations on Non-Firearm Weapons

Between the 1800s and 1900s, many states and jurisdictions enacted laws which regulated, to various extents, the carry, sale, and/or possession of Bowie knives, bludgeons, billy clubs, slungshots, sandbags, and/or toy guns—items which Defendants liken to stun guns and tasers as "non-firearm weapons."  *See* Doc. 50 ¶¶ 32–43.

## B.  Procedural History

Plaintiffs filed their initial complaint on October 5, 2021, and an amended complaint on December 22, 2021.  Docs. 1, 5 (First Amended Complaint, "FAC").  Plaintiffs allege that N.Y. Penal Law § 265.01(1) and N.Y.C. Admin. Code § 10-135 are unconstitutional, and Defendants therefore deprived them of their right to bear arms under color of state law, in violation of 42 U.S.C. § 1983, by enforcing those laws.  Doc. 5 ¶¶ 50, i–ii.  Plaintiffs seek (1) a declaratory judgment that § 265.01(1) and § 10-135 are facially unconstitutional, or alternatively, unconstitutional as applied; (2) a preliminary and/or permanent injunction restraining Defendants from enforcing § 265.01(1) and § 10-

---

[8] It is unclear why Defendants mention tasers in this response, given that N.Y.C. Admin. Code § 10-135 states it does "not include an 'electronic dart gun' as such term is defined in § 265.00 of the penal law."  *See* Doc. 50 ¶ 16.

135; (3) attorney's fees and costs; and (4) any other relief the Court deems just and
equitable.  *Id.* ¶¶ i–v.  Defendants answered the FAC on April 22, 2022.  Doc. 15.

Following discovery, Plaintiffs moved for summary judgment on March 1, 2024.
Doc. 25.  Defendants filed an opposition and cross-motion for summary judgment on
April 26, 2024.  Doc. 38.

On June 12, 2024, Plaintiffs filed a notice of constitutional question, pursuant to
Federal Rule of Civil Procedure 5.1(a)(2), noting that the FAC and motion for summary
judgment "draw into question the constitutionality of the prohibition on 'electronic stun
guns' and 'electronic dart guns' set forth in § 265.01(1) of the Penal Law under the
Second and Fourteenth Amendments to the United States Constitution."[9]  Doc. 51.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a matter
of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a
reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford
Union Free School District*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint
Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it
might affect the outcome of the litigation under the governing law.  *Id.*  The party moving
for summary judgment is first responsible for demonstrating the absence of any genuine
issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving
party meets its burden, "the nonmoving party must come forward with admissible
evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

---

[9] Federal Rule of Civil Procedure 5.1 provides, "[a] party that files a pleading, written motion, or other
paper drawing into question the constitutionality of a federal or state statute must promptly:  (1) file a
notice of constitutional question stating the question and identifying the paper that raises it, if:  . . . (B) a
state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers
or employees in an official capacity."  Fed. R. Civ. P. 5.1(a)(1)(B).  In their Memorandum of Law in
Support of Defendants' Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for
Summary Judgment, filed on April 26, 2025, Defendants had noted that Plaintiffs "fail[ed] to comport with
the requirements" of Rule 5.1.  Doc. 43 at 6 n.2.

judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or speculation. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *see also Ridinger v. Dow Jones & Co.*, 651 F.3d 309, 317 (2d Cir. 2011). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

The same legal standard applies when analyzing cross-motions for summary judgment. *See Schultz v. Stoner*, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004) (quoting *Aviall, Inc. v. Ryder System, Inc.*, 913 F. Supp. 826, 828 (S.D.N.Y. 1996)). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Board of Education*, 667 F.2d 305, 314 (2d Cir. 1981)). The Court is not required to grant summary judgment in favor of either moving party. *See id.* (citing *Heublein Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).

## III.   DISCUSSION

The question before the Court is whether there is any genuine dispute of material fact as to the constitutionality of N.Y. Penal Law § 265.01 and N.Y.C. Admin. Code § 10-135 under the Second Amendment.

### A. Applicable Law

The Second Amendment provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment is not limited to the "right to bear arms in a state militia," but rather includes the "individual right to possess and carry weapons in case of confrontation."  554 U.S. 570, 592, 620 (2008).  In *McDonald v. Chicago*, the Supreme Court held for the first time that the Second Amendment's protections apply fully to the states through the Due Process Clause of the Fourteenth Amendment.  561 U.S. 742 (2010).  In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Supreme Court recognized *Heller* and *McDonald* as protecting the right of an "ordinary, law-abiding citizen to possess a handgun in the home for self-defense," and it held that individuals also have a "right to carry a handgun for self-defense *outside* the home."  597 U.S. 1, 10 (2022) (emphasis added).

However, the "the right secured by the Second Amendment is not unlimited," and it is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  *Heller*, 554 U.S. at 626.  The Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes."  *Id.* at 625.  Put differently, the Supreme Court has stated it is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons' that the Second Amendment protects the possession and use of weapons that are 'in common use at the time.'"  *Bruen*, 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 627).  Consistent with that principle, in holding that a ban on the possession of handguns was unconstitutional, the *Heller* Court emphasized "that the American people have considered the handgun to be the quintessential self-defense weapon."  *Id.* at 629.

9

After *Heller* and *McDonald*, but before *Bruen*, the Second Circuit, "as well as every other regional circuit," applied the following two-step framework for analyzing Second Amended challenges:

> At step one, [courts] asked whether a challenged law burdened conduct that fell within the scope of the Second Amendment based on its text and history.  If so, [they] proceeded to step two, assessing whether the challenged law burdened the core of the Second Amendment, defined by *Heller* as self-defense in the home.  If the burden was *de minimis*, the law was subject to intermediate scrutiny; if the burden was substantial and affected the core of the right, the law was subject to strict scrutiny.

*Antonyuk v. James*, 120 F.4th 941, 963 (2d Cir. 2024) (internal citations omitted) (collecting pre-*Bruen* cases from every circuit court except the Eighth).  In *Bruen*, the Supreme Court rejected Step 2 of that framework and "set out a new 'test rooted in the Second Amendment's text, as informed by history.'"  *Id.* at 964 (quoting *Bruen*, 597 U.S. a 19).  *Bruen* established a new standard for applying the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 24 (citation omitted).  Accordingly, therefore, in analyzing a challenge to a law on Second Amendment grounds, a court has to analyze whether "the Second Amendment's plain text covers an individual's conduct," and if it does, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Antonyuk*, 120 F.4th at 964.  As to Step 1—the "plain text" inquiry—the *Bruen* Court reiterated its statement from *Heller* that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."  *Bruen*, 597 U.S. at 28 (quoting *Heller*, 554 U.S. at 582).  "By that same logic," as to Step 2—the examination of "the Nation's historical tradition of firearm regulation"—"the Second Amendment permits more than just those regulations identical to ones that could be

found in 1791." *United States v. Rahimi*, 602 U.S. 680, 689, 691–92 (2024). That is, for the government to "justify its regulation" by showing that it is "'relevantly similar' to laws that our tradition is understood to permit," it need only point to a "historical analogue," not a "historical twin." *Id.* at 691, 701 (quoting *Bruen*, 597 U.S. at 30).

### B. Analysis

"[T]he Second Amendment protects only the carrying of weapons that are those 'in common use at the time,' as opposed to those that 'are highly unusual in society at large.'" *Bruen*, 597 U.S. at 47 (quoting *Heller*, 554 U.S. at 627). In this context, "in common use at the time" refers to "weapons in use *today*," not at the time of ratification. *Maloney v. Singas*, 106 F. Supp. 3d 300, 310 (E.D.N.Y. 2015).

### 1. Burden of Proof for "Common Use" Analysis

The parties agree that the two-step Second Amendment test is a burden-shifting framework, whereby after Step 1, the burden shifts to the government to establish that its regulation accords with this Nation's history and tradition. *See Bruen*, 597 U.S. at 24 (emphasis added) (after Step 1, "[t]he government must *then* justify its regulation" at Step 2). However, the parties dispute whether the "common use" analysis takes place during Step 1 or Step 2 of the Second Amendment framework, and therefore, which party carries the burden to prove it.

Plaintiffs assert that "the question of commonality is relevant to the *historical* prong," Step 2, and is thus the government's burden, since the "'historical tradition of prohibiting the carrying of dangerous and unusual weapons' was the Court's whole justification in the first place for interpreting the Second Amendment as protecting arms 'in common use.'" Doc. 49 at 4; Doc. 26 at 10 (quoting *Heller*, 554 U.S. at 627). Plaintiffs explain that Step 1 focuses "solely on the 'plain text' of the Second Amendment," and argue that stun guns and tasers "plainly qualify" as arms, and thus Step 1 is "quickly and conclusively" satisfied. Docs. 26 at 9, 49 at 3, 4. Defendants, on the other hand, argue that the textual analysis at Step 1 itself involves a determination of

whether "the weapon at issue is 'in common use' today" for lawful purposes, as the court must find that stun guns and tasers are within the *scope* of the Second Amendment's protections before turning to the question of whether the government's regulation is nonetheless valid based on the Nation's history and tradition. Therefore, Defendants argue, Plaintiffs' bear the initial burden of showing that stun guns and tasers are in "common use." Doc. 43 at 8.

This Court follows the weight of authority in determining that the "common use" analysis is part of Step 1. *See United States v. Berger*, 715 F. Supp. 3d 676, 681–82 (E.D. Pa. 2024) ("Following Bruen, most federal courts considering Second Amendment challenges address the common-use issue at step one of the analysis.") (collecting cases); *see, e.g.*, *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 254–55 (2d Cir. 2015), *cert. denied Shew v. Malloy*, 579 U.S. 917 (2016); *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023); *United States v. Rahimi*, 61 F.4th 443, 454 (5th Cir. 2023), *reversed and remanded on other grounds*, 602 U.S. 680 (2024). *Heller* framed the "common use" analysis as part of the determination of what "sorts of weapons" are protected by the Second Amendment. *Heller*, 554 U.S. at 627; *see also id.* at 625 (emphasis added) (stating it "accords with the historical understanding of the *scope of the right*" to bear arms to say that the "Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes"); *Rahimi*, 602 U.S. at 735 (Kavanaugh, J., concurring) (emphasis added) (internal citation omitted) ("*Heller* . . . recognized a few categories of traditional exceptions to the right. For example, *Heller* indicated that: . . . the Second Amendment *attaches* only to weapons 'in common use[.]'"). Therefore, "[b]ecause determining which 'arms' the amendment covers is a textual matter," the "common use" analysis is to be conducted at Step 1, in assessing whether the regulated conduct is presumptively protected by the Constitution. *United States v. Lane*, 689 F. Supp. 3d 232, 252 at n.22 (E.D. Va. 2023). Plaintiffs' contrary, narrower interpretation of the textual analysis—that Step 1 is "quickly and conclusively"

satisfied because stun guns and tasers "plainly qualify" as arms, Docs. 49 at 3, 4; 26 at 9—is "far too facile and would essentially eliminate the step-one analysis whenever a regulation has the slightest connection to guns." *Mills v. New York City, New York*, No. 23 Civ. 7460 (JSR), 2024 WL 4979387, at *8, *9 (S.D.N.Y. Dec. 4, 2024) (granting motion to dismiss claim that various New York City firearm licensing regulations violated the Second Amendment, based in part on plaintiffs' failure, at step one of the Second Amendment analysis, to "show that the challenged regulations are foreclosed by the text of the Second Amendment").  Indeed, in *Bruen* itself, *at the outset of its textual analysis*, the Supreme Court established that the handguns at issue were not disputed to be "in common use" for self-defense, and only then turned to Step 2, the assessment of the Nation's historical tradition of firearm regulation.  *See Bruen*, 597 U.S. at 32–34.

While the Second Circuit has not squarely discussed which party bears the burden to establish whether an arm is in "common use," it has, like the Supreme Court in *Bruen*, treated the "common use" assessment as core to the "initial" question, at Step 1, of whether the "challenged legislation impinges upon conduct protected by the Second Amendment."[10]  *Cuomo*, 804 F.3d at 254–55 (considering under the "First Step:  Whether

---

[10] The *Cuomo* court does note that, based on *Heller*'s statement that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms," it follows that "the State bears the initial burden of rebutting" the "presumption in favor of Second Amendment protection."  *Cuomo*, 804 F.3d at 257 n.73.  It would seem to follow that this "burden of rebutting" is triggered *after* the "First Step: Whether the Second Amendment Applies," *id.* at 254, given the Second Amendment only "extends" to a given case, *id.*, if the first step is satisfied.  On the other hand, at least one court seems to have interpreted *Cuomo* to mean that the government's burden is triggered *during* Step 1, albeit still in response to a plaintiff's presentation of prima facie evidence that the Second Amendment protects the conduct and weapon at hand.  *See Avitabile v. Beach*, 368 F. Supp. 3d 404, 411, 412, 421 (N.D.N.Y. 2019) (finding stun guns and tasers were in "common use" where plaintiff did his best to "develop[] the 'common use' issue in discovery" through data, the State stipulated to the limited factual record developed by plaintiff, and the State offered "no meaningful contrary evidentiary showing"; and finding N.Y. Penal Law § 265.01 unconstitutional as applied to stun guns and tasers).  Another court, adopting a third approach, seems to have interpreted the "presumption in favor of Second Amendment protection" as attaching *before* Step 1, with the government bearing the "initial burden of rebutting" that presumption by affirmatively "disprov[ing]" either "common use" or "typical possession by law-abiding citizens" at Step 1, that is, without the plaintiff necessarily presenting any evidence first.  *Maloney v. Singas*, 351 F. Supp. 3d 322, 233, 234 (E.D.N.Y. 2018) (concluding that the government needs to affirmatively "show that, at a minimum, [the arms at issue] are not typically possessed by law-abiding citizens for lawful purposes" in order to "exempt

the Second Amendment Applies," that "[t]he Second Amendment protects only 'the sorts of weapons' that are (1) 'in common use' and (2) 'typically possessed by law-abiding citizens for lawful purposes.'").[11]  And, following *Bruen*, courts within the Second Circuit have continued to analyze "common use" at Step 1—and generally as plaintiffs' burden.  *See, e.g.*, *Grant v. Lamont*, No. 22 Civ. 1223 (JBA), 2023 WL 5533522, at *4 (D. Conn. Aug. 28, 2023) ("Under *Heller* and *Bruen*, Plaintiffs 'bear the burden of producing evidence that the specific firearms they seek to use and possess are in common use for self-defense, that the people possessing them are typically law-abiding citizens, and that the purposes for which the firearms are typically possessed are lawful ones.' . . . 'If Plaintiffs establish each of those elements, the burden shifts to Defendants to justify their regulation based on *Bruen*'s requirements for establishing relevant similarity to history and tradition.'"); *Mintz v. Chiumento*, 724 F. Supp. 3d 40, 55 (N.D.N.Y. 2024) ("*Bruen*'s first step . . . requires a textual analysis, determining whether the challenger is part of 'the people' whom the Second Amendment protects, whether the weapon at issue is 'in common use' today for self-defense, and whether the proposed course of conduct

---

[10] the challenged law from Second Amendment coverage").  However, *Maloney*'s statement that "nunchakus constitute a 'bearable arm' and so the rebuttable presumption that nunchakus are protected by the Second Amendment applies," *id.* at 234, is, like Plaintiffs' proposed approach, far too sweeping and "inconsistent with *Bruen* itself."  *See Mills*, 2024 WL 4979387, at *8.  In any event, here, Plaintiffs argue that "common use" is not in Step 1 whatsoever but in Step 2.  The *Cuomo* court is clear that "common use" is assessed at Step 1; therefore, the Court determines it is Plaintiffs' burden to establish it.

[11] Although *Bruen* dispensed with the second step of the analysis applied in *Cuomo*, "means-end scrutiny," the first part of the analysis in *Cuomo* remains consistent with *Bruen*.  *See Bruen*, 597 U.S. at 19 ("Step one of the predominant framework is broadly consistent with *Heller*, . . . [b]ut *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context."); *see id.* at 18–19 (internal citations omitted) (explaining that in "means-end scrutiny," courts would "analyze 'how close the law [came] to the core of the Second Amendment right and the severity of the law's burden on that right.'  The Courts of Appeals [would] generally maintain 'that the core Second Amendment right is limited to self-defense *in the home*.'  If a 'core' Second Amendment right [was] burdened [by the challenged law], courts [would] apply 'strict scrutiny' and ask whether the Government [could] prove that the law [was] "narrowly tailored to achieve a compelling governmental interest.  Otherwise, they [would] apply intermediate scrutiny and consider whether the Government [could] show that the regulation [was] 'substantially related to the achievement of an important governmental interest.'"); *see also Frey v. Bruen*, 2022 WL 3996713, at *3 and n.2 (S.D.N.Y. Sept. 1, 2022) (explaining that *Bruen* rejected the *second step* of the previous two-step approach, which involved, in the *first step*, analyzing "whether the challenged legislation impinges upon conduct protected by the Second Amendment, or weapons in common use and typically possessed by law-abiding citizens for lawful purposes," and in the second step, determining the appropriate level of scrutiny).

14

falls within the Second Amendment."); *Vermont Federation of Sportsmen's Clubs v. Birmingham*, 741 F. Supp. 3d 172, 187 (D. Vt. 2024) ("[A]ccording to *Bruen*, a plaintiff must prove that the regulated weapons are in common use in order to qualify for presumptive protection under the Second Amendment.  Once a plaintiff has done that, the State may justify its regulation by demonstrating that the regulation 'is consistent with the Nation's historical tradition of firearm regulation.'"); *Lane v. Rocah*, No. 22 Civ. 10989 (KMK), 2024 WL 54237, at *8 (S.D.N.Y. Jan. 4, 2024) (emphasis in original) (finding Plaintiffs' proposed conduct was "*arguably* affected with a constitutional interest," because they desired to possess weapons "in common use," and "typically used for self defense and hunting," and deferring to a later stage in the case the assessment of "whether a law prohibiting that conduct turns out to be constitutional").

Other Circuit Courts have come to the same conclusion that whether a weapon is in "common use" is part of the "textual analysis" in Step 1.  For example, the Ninth Circuit expressly stated:

> *Bruen* step one involves a threshold inquiry.  In alignment with *Heller*, it requires a textual analysis, determining whether the challenger is "part of 'the people' whom the Second Amendment protects," whether the weapon at issue is "in common use" today for self-defense," and whether the "proposed course of conduct" falls within the Second Amendment.

*Alaniz*, 69 F.4th at 1128.

In *United States v. Rahimi*, the Fifth Circuit similarly stated that the firearms at issue were "in common use" and thus "within the scope" of the Second Amendment, before finding that "*Bruen*'s first step [wa]s met, and the Second Amendment presumptively protect[ed] Rahimi's right to keep the weapons officers discovered in his home."  61 F.4th at 454.  The Fifth Circuit then found, at Step 2, that the Government failed to demonstrate that the restriction on the Second Amendment right imposed by 18 U.S.C. § 922(g)(8) "fits within our Nation's historical tradition of firearm regulation," thus concluding that the law was facially unconstitutional.  *Id.* at 460–61.  The Supreme

Court ultimately reversed the Fifth Circuit's finding that the statute was unconstitutional—holding that the Second Amendment in fact "*permits the disarmament* of individuals who pose a credible threat to the physical safety of others"—however its reversal was premised on its findings that the Fifth Circuit engaged in an overly demanding historical inquiry at Step 2, and incorrectly applied the Court's "precedents governing facial challenges." *Id.* at 693, 701 (emphasis added).[12]  The Court did not, however, criticize the Fifth Circuit's analysis at Step 1, which included its finding that the handguns at issue were in "common use."

Therefore, Plaintiffs bear the burden to prove, at Step 1, that stun guns and tasers are in "common use."

2. *"Common Use" Analysis*

"[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625. Therefore, Plaintiffs must show that stun guns and tasers are in "common use" today, and that they are "typically possessed by law-abiding citizens for lawful purposes." *Cuomo*, 804 F.3d at 255–56.

Whether an arm is in "common use" is "an objective and largely statistical inquiry." *Id.* at 256.  "Since *Heller*, courts in this Circuit have require[d] substantial statistical evidence showing the popularity of a weapon before concluding that it is protected by the Second Amendment." *Jones v. Bermudez*, No. 15 Civ. 8527 (PKC) (BCM), 2019 WL 2493539, at *9 n.7 (S.D.N.Y. Feb. 14, 2019), *report and recommendation adopted sub nom. Jones v. Burmudez*, No. 15 Civ. 8527 (PKC) (BCM), 2019 WL 1416985 (S.D.N.Y. Mar. 29, 2019); *see also Berger*, 715 F. Supp. 3d at 691

---

[12] The Supreme Court explained:  "The Fifth Circuit made two errors.  First, like the dissent, it read *Bruen* to require a 'historical twin' rather than a 'historical analogue.'  Second, it did not correctly apply our precedents governing facial challenges . . . Rather than consider the circumstances in which Section 922(g)(8) was most likely to be constitutional, the panel instead focused on hypothetical scenarios where Section 922(g)(8) might raise constitutional concerns.  That error left the panel slaying a straw man." *Rahimi*, 602 U.S. at 701 (internal citations omitted).

(citation omitted) ("Every post-*Heller* case to grapple with whether a weapon is 'popular' enough to be considered 'in common use' has relied on statistical data of some form."). Courts have applied different statistical methodologies, such as evaluating the "raw" total number of a particular arm in the U.S., considering the "percentage and proportion" of ownership of that specific arm relative to total weapon ownership, and taking into account how many jurisdictions "allow or bar a particular weapon." *Berger*, 715 F. Supp. 3d at 691 (citation omitted). "[T]ypical possession," meanwhile, requires analyzing "both broad patterns of use and the subjective motives of gun owners." *Cuomo*, 804 F.3d at 256. "Looking solely at a weapon's association with crime . . . is insufficient. [The Court] must also consider more broadly whether the weapon is 'dangerous and unusual' in the hands of law-abiding civilians." *Id.* As to this "typical possession" analysis, the Second Circuit has recognized that "reliable empirical evidence of lawful possession for lawful purposes [i]s 'elusive,' beyond ownership statistics." *Id.* at 257.

Here, Plaintiffs have not provided any studies, reports, or data for the Court to conduct a "statistical inquiry" into whether stun guns and tasers are in common use. *Id.* at 256. Plaintiffs do not "even identify the most basic of statistics including, for example, the number of stun guns and/or tasers purchased in the United States for any given year." Doc. 43 at 11. Thus, Plaintiffs provide "no evidence whatsoever to support their claim that stun guns and tasers are in common use in the United States for self-defense, let alone in New York City." *Id.* at 10–11.

Plaintiffs' reliance on "findings and conclusions" from non-binding cases is of no moment. Doc. 49 at 7; *see People v. Yanna*, 297 Mich. App. 137, 144 (Ct. App. 2012) (citation omitted) ("Hundreds of thousands of Tasers and stun guns have been sold to private citizens, with many more in use by law enforcement officers."); *Avitabile*, 368 F. Supp. at 411 ("[B]ased on the limited data available, the parties agree there are at least 300,000 tasers and 4,478,330 stun guns owned by private citizens across the United States."); *O'Neil v. Neronha*, 594 F. Supp. 3d 463, 473 (D.R.I. 2022) ("Defendants agree

17

that millions of stun guns have been sold nationwide[.]").  Putting aside that the phrases
"hundreds of thousands" and "millions" are indefinite, and that the figures in *Avitabile*
were based on "limited data," Plaintiffs do not provide a legal basis for the Court to adopt
those findings.[13]  Moreover, Plaintiffs do not even attempt to argue how these scant
sources could inform whether stun guns and tasers are commonly used for lawful
purposes.

Plaintiffs erroneously state that the Second Circuit in *Cuomo* found a pump-action
rifle was in "common use," without any "evidence going to the issue."  Doc. 49 at 4.  The
*Cuomo* court considered the constitutionality of two laws regulating weapons and large-
capacity magazines:  a New York law, and a Connecticut law regulating "183 particular
assault weapons," of which just one of the 183 weapons, the pump-action rifle, was a
"non-semiautomatic firearm."  *Cuomo*, 804 F.3d at 250 and n.17.  The court initially
found, based on various statistics offered by the plaintiff, that the assault weapons and
large-capacity magazines being regulated by the laws at issue were "in common use."  *Id.*
at 255.  Then, it analyzed whether the weapons were additionally "typically possessed by
law-abiding citizens for lawful purposes"; after recognizing the difficulty of that analysis,
the court opted to "*assume without deciding*" that the semiautomatic weapons were
within the scope of the Second Amendment's protections.  *Id.* at 256, 257 n.73.  However,
as to the pump-action rifle only, *i.e.* as to the "single non-semiautomatic firearm" covered
by the Connecticut law, the court explicitly *decided*, as opposed to "*assum[ing] without
deciding*," that the Second Amendment presumptively applied.  *Id.* at 257 n.73.  The court
reasoned that, since the government "focused on semiautomatic weapons," it "failed to

---

[13] Plaintiffs suggest that the Court should rely on those findings by quoting a Ninth Circuit case, *Teter v. Lopez*, 76 F.4th 938 (9th Cir. 2023), *vacated on rehearing en banc*, which provided: "[T]he historical research required under *Bruen* involves issues of so-called 'legislative facts'—those 'which have relevance to legal reasoning and the lawmaking process,' such as 'the formulation of a legal principle or ruling by a judge or court'—rather than adjudicative facts, which 'are simply the facts of the particular case.'" Doc. 49 at 7 n.1 (quoting *Teter*, 76 F.4th at 946–47 (internal citation omitted)).  However, the quoted language is not in reference to a "common use" analysis, nor do Plaintiffs provide any explanation as to why it should apply thereto.

make any argument that this pump-action rifle [wa]s dangerous, unusual, or otherwise not within the ambit of Second Amendment protection," such that "the presumption that the Amendment applies" to it "remain[ed] unrebutted." *Id.*; *see Virginia v. Black*, 538 U.S. 343, 369 (2003) (Scalia, J., concurring in part, concurring in the judgment in part, and dissenting in part) (quoting Black's Law Dictionary 1190 (6th ed. 1990)) (defining "prima facie evidence" as that which, "if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports"). Therefore, the *Cuomo* court's determination as to pump-action rifles was entirely separate from its "common use" analysis, and it nowhere suggested "common use" can be established without any statistical evidence whatsoever.

Plaintiffs also overstate the Supreme Court's holding in *Caetano v. Massachusetts*, 577 U.S. 411 (2016), arguing that the case "erases any conceivable doubt concerning the weapons at issue." Doc. 49 at 3. In *Caetano*, the Court vacated a Massachusetts court's judgment upholding a ban on the possession of stun guns, but it did so specifically because "the explanation the Massachusetts court offered for upholding the law contradict[ed] th[e] Court's precedent." *Caetano*, 577 U.S. at 412. The Court explained that the Massachusetts court (1) improperly relied on the fact that stun guns "were not in common use at the time of the Second Amendment's enactment," and (2) it improperly concluded stun guns were "unusual" because they are "a thoroughly modern invention"—both in contradiction with the principles established in *Heller*. *Id.* at 411, 412 (quoting *Commonwealth v. Caetano*, 470 Mass. 774, 781 (2015), *judgment vacated sub nom. Caetano v. Massachusetts*, 577 U.S. 411 (2016)).[14] In other words, *Caetano* reiterated that the Second Amendment can extend to arms "that were not in existence at

---

[14] The Court additionally rejected the Massachusetts Court's third explanation for its holding that the Second Amendment did not protect stun guns: that the record did not "suggest that [stun guns] are readily adaptable to use in the military." *Caetano*, 470 Mass. at 781. The Court found this reasoning also contradicted *Heller*, as "*Heller* rejected the proposition 'that only those weapons useful in warfare are protected.'" *Caetano*, 577 U.S. at 412 (quoting *Heller*, 554 U.S. at 624–25).

the time of the founding." *Id.* at 312 (quoting *Heller*, 554 U.S. at 582); *see also Bruen*, 597 U.S. at 28 (same). The *Caetano* Court did not, however, conclusively determine, because it was not required to, that stun guns and tasers are in "common use."[15]

In sum, because Plaintiffs have failed to provide any evidence that stun guns and tasers are in "common use"; they have clearly not "set forth significant, probative evidence on which a reasonable fact-finder could decide in [their] favor." *Senno*, 812 F. Supp. 2d at 467–68. Therefore, no "reasonable jury could return a verdict" that stun guns and tasers are presumptively protected by the Second Amendment at Step 1 of the analysis, and the Court does not proceed to Step 2. *Id.* at 467; *see Cuomo*, 804 F.3d at 254 ("If the challenged restriction does not implicate conduct within the scope of the Second Amendment, our analysis ends and the legislation stands.").

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment is DENIED, and Defendants' cross-motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 25 and 38, and close the case.

It is SO ORDERED.

Dated:    March 24, 2025
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

---

[15] The Court notes, however, that in concurrence, Justice Alito, joined by Justice Thomas, states: "While less popular than handguns, stun guns are widely owned and accepted as a legitimate means of self-defense across the country. Massachusetts' categorical ban of such weapons therefore violates the Second Amendment." *Caetano*, 577 U.S. at 420 (Alito, J. concurring). However, a concurrence is not binding precedent. *See Maryland v. Wilson*, 519 U.S. 408, 413 (1997) (noting that a statement "contained in a concurrence" did not "constitute[] binding precedent").